UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


BOBBI L. BOLTON                    :
                                   :              PRISONER
        v.                         :     CASE NO. 3:06cv1009(AHN)
                                   :
FEDERAL BUREAU OF PRISONS, et al. :


RULING ON MOTION TO DISMISS

Plaintiff Bobbi L. Bolton, a former federal inmate, brings this action *pro se* against the Federal Bureau of Prisons, Warden William Willingham, Assistant Warden Clay, Case Manager Richard Shamro, Dr. Rentler, Captain Pummell, Lieutenant Smith and John Does 8-20. Bolton alleges many violations of her constitutional rights and several tort claims. The defendants have filed a motion to dismiss. For the reasons that follow, the motion is granted in part.

I.   Standard of Review

When considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. See Bell Atlantic v.

Twombley, ___ U.S. ___, 127 S. Ct. 1955, 1964-65 (2007).
Conclusory allegations are not sufficient.  The plaintiff must
"amplify a claim with some factual allegations in those contexts
where such amplification is needed to render a claim plausible."
Iqbal v. Hasty, ___ F.3d ___, 2007 WL 1717803, at *11 (2d Cir.
June 14, 2007).

In deciding a motion to dismiss, the court does not
determine whether the plaintiff ultimately will prevail.
Instead, the court determines whether the plaintiff should be
permitted to present evidence to support his claims.  See York v.
Association of Bar of City of New York, 286 F.3d 122, 125 (2d
Cir.) (quoting Scheuer, 416 U.S. at 236), cert. denied, 537 U.S.
1089 (2002).  However, "[c]onclusory allegations or legal
conclusions masquerading as factual conclusions will not suffice
to prevent a motion to dismiss" from being granted.  Smith v.
Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002)
(internal quotation marks and citation omitted).

In its review of a motion to dismiss, the court may consider
"only the facts alleged in the pleadings, documents attached as
exhibits or incorporated by reference in the pleadings and
matters of which judicial notice may be taken."  Samuels v. Air
Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

II.  <u>Facts</u>[1]

Bolton was transferred to FCI Danbury on April 7, 2004.
Prior to her arrival, she had filed suit against the Bureau of
Prisons and one correctional officer at FCI Tallahassee because
the correctional officer raped her.

Bolton told two correctional officials, who are not named as
defendants, that she was afraid to be on the compound because
inmate Michelle Ortiz also was confined at FCI Danbury.  Bolton
was placed in general population.

On May 5, 2004, Bolton placed herself in protective custody
in the special housing unit because she thought the conditions in
the general population housing unit were unsanitary and she had
been threatened by inmate Ortiz.  On August 20, 2004, defendant
Shamro required Bolton to return to general population.  The
housing unit to which she was transferred was very small, unclean
and lacked ventilation.  She was denied a locker for personal
belongings and a pillow for two weeks.  When Bolton requested
grievance forms to complain about the housing assignment and lack
of a storage locker and pillow, two counselors, who are not named
as defendants, harassed her.

Inmate Ortiz was assigned to Bolton's housing unit.  When
Bolton questioned the assignment, defendant Shamro refused to

---

[1]The facts are taken from the complaint and attached
documents.

change the assignment because investigation of her claim regarding inmate Ortiz revealed no threat.  Bolton telephoned her attorney and, at his recommendation, filed a grievance.  The attorney told her that he would contact the Department of Justice.  The following day, November 19, 2004, Bolton was placed in the special housing unit.

While in the special housing unit, Bolton was denied materials to continue to pursue her degree in theology through correspondence courses.  Defendant Pummell denied Bolton a hearing regarding her placement in segregation.  On November 23, 2004, defendant Shamro issued Bolton a disciplinary report for threatening him.  The disciplinary charge was dismissed.

On December 12, 2004, Bolton stated that she was depressed and asked to be placed on suicide watch.  The on-call psychologist complied.  The following day, defendant Dr. Rentler spoke with the inmate in the neighboring cell, asked Bolton one question and informed her that she would be returned to the special housing unit.  Bolton explained that she had just learned that she had cancer growing around her brainstem and was distraught.  Defendant Rentler refused to provide counseling or assistance.

Instead, a transfer team was summoned.  After being handcuffed and shackled, Bolton was moved to a cell with no toilet or running water.  Bolton remained in the dry cell from

4

December 13, 2004, through December 17, 2004.  On December 15, 2004, Bolton received a disciplinary report when she permitted another inmate to use her identification number to call Bolton's attorney and inform him of the conditions in the special housing unit.  Bolton was found guilty and sanctioned with 180 days loss of telephone privileges.

On October 28, 2004, and December 21, 2004, two different inmates used vulgar language toward Bolton and would not comply with Bolton's requests that they stop speaking to her using that language.  Correctional staff took no action in response to either incident.

On January 11, 2005, Bolton underwent a biopsy on her throat and nasal area.  The doctor asked that she receive cold fluids and ice.  In addition, Bolton was instructed not to eat solid or spicy foods for ten days.  Defendant Smith did not follow these instructions.

On January 17, 2005, defendant Clay toured the special housing unit.  Bolton was speaking with another inmate. Defendant Clay spoke to Bolton in an unprofessional manner and hit a roll of toilet paper toward Bolton.  When Bolton discussed her concerns with defendant Willingham, he stated that he supported his staff.

III. Discussion

Bolton includes sixteen claims in her complaint:  (1)

5

correctional staff retaliated against Bolton because she had sued
a correctional officer at another facility; (2) Bolton's claim
that she feared another inmate at FCI Danbury was not
investigated; (3) three months after she placed herself in
protective custody, Bolton was required to return to general
population and was not immediately provided a storage locker or
pillow; (4) two counselors harassed Bolton when she requested
grievance forms to complain that she was not housed in a two-
person cubicle and was not provided a locker and pillow; (5) in
July 2004, defendant Shamro failed to investigate Bolton's claim
of threats by another inmate; (6) Bolton was confined in the same
housing unit as the inmate she perceived as a threat and was
transferred to the special housing unit when she and her attorney
complained about the assignment; (7) Bolton was denied materials
to continue to pursue her degree in theology through
correspondence courses; (8) on November 23, 2004, defendant
Shamro issued Bolton a disciplinary report for threatening him;
(9) defendant Pummell denied Bolton a hearing regarding her
placement in protective custody in the special housing unit; (10)
in December 2004, Bolton was denied mental health treatment and
transferred to a dry cell where she remained in restraints for
five days during which time she was unable to eat, shower, use
the toilet or call her attorney; (11) defendant Smith did not
follow medical instructions that Bolton was to receive cold

fluids and ice following a biopsy; (12) on December 15, 2004, Bolton received a disciplinary report for improper telephone use; (13) on January 17, 2005, defendant Clay spoke to Bolton in an unprofessional manner and hit a roll of toilet paper toward her; (14) some of Bolton's grievances were mishandled or denied as repetitive; (15) the defendants took no action when Bolton was verbally harassed by two inmates on October 28, 2004, and December 21, 2004; and (16) defendant Willingham told her that he supported the actions of his staff.

The defendants move to dismiss the complaint on the grounds that Bolton has not stated cognizable claims for relief and has not exhausted her administrative remedies with regard to several claims.  In their response, the defendants rely on information not included in the complaint or attached exhibits.  In her opposition, Bolton seeks to introduce additional exhibits.

Material outside the complaint may not be considered when ruling on a motion to dismiss unless the court converts the motion to dismiss to a motion for summary judgment and affords the parties time to present additional evidence.  See Rule 12(b), Fed. R. Civ. P.  Because the parties have not had time to conduct discovery, the court declines to construe the motion to dismiss as a motion for summary judgment.  Thus, in ruling on this motion, the court has excluded any evidence not included in the complaint or attached to the complaint as an exhibit.

A.   <u>Official Capacity and Federal Bureau of Prisons Claims</u>

Bolton names the Federal Bureau of Prisons as a defendant and names all other defendants in their individual and official capacities.  The defendants argue that the court lacks subject matter jurisdiction over these claims.  The court agrees.

In <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), the Supreme Court recognized a private cause of action for damages against federal officers alleged to have violated the plaintiff's constitutional rights.  <u>Bivens</u> actions may be filed only against federal officials in their individual capacities.  A lawsuit against a federal agency or federal official in his official capacity is considered a lawsuit against the United States and, absent a waiver, is barred by sovereign immunity. <u>See</u> <u>FDIC v. Meyers</u>, 510 U.S. 471, 475 (1994) (federal agency); <u>Robinson v. Overseas Military Sales Corp.</u>, 21 F.3d 502, 509-10 (2d Cir. 1994) (federal official in his official capacity).

Bolton seeks damages for the violation of various constitutional rights and for the torts of assault and battery. The United States has not waived its sovereign immunity from suit for such claims against the Bureau of Prisons or individual correctional officials in their official capacities.  Thus, the defendants' motion to dismiss is granted as to all claims against the Bureau of Prisons and against the remaining defendants in their official capacities.

8

B.  <u>Torts</u>

Bolton also references several common law torts.  Under the Federal Tort Claims Act ("FTCA"), the United States has waived sovereign immunity for claims seeking money damages for injuries caused by a federal official while acting within the scope of his employment if a private person committing the same act would be liable under the law of the state where the incident occurred.  <u>See</u> 28 U.S.C. § 1346(b).  However, FTCA claims are not cognizable against individual federal officials.  <u>See</u> <u>Castro v. United States</u>, 34 F.3d 106, 110 (2d Cir. 1994) ("the FTCA makes individual government employees immune from common-law tort claims for acts committed within the scope of their employment").

Claims such as assault, battery and negligence against the defendants would be cognizable as a claim against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80.  Before bringing an FTCA claim, the plaintiff must exhaust her administrative remedies with the appropriate federal agency.  <u>See</u> 28 U.S.C. § 2675(a).  In addition, the proper defendant in an FTCA claim is the United States.

Bolton has included no allegations referencing the exhaustion requirement.  In addition, one of the documents attached to the complaint clearly sets forth the procedure for filing an FTCA claim.  Because Bolton was aware of and did not follow the proper procedures, the court will not construe the

complaint as asserting an FTCA claim.  All tort claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as lacking an arguable legal basis and pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) as seeking relief from persons who are immune from that relief.

    C.   Individual Capacity Bivens Claims

    To state a Bivens claim against the defendants in their individual capacities, Bolton must show that: (1) she has been deprived of a constitutional right[2] by a federal official and (2) in depriving her of that right, the federal official was acting under color of federal law.  See Davis v. United States, 430 F. Supp. 2d 67, 78 (D. Conn. 2006).  Bolton alleges that all defendants were working in their capacities as federal correctional employees.  Thus, she has satisfied the second requirement.  The court considers the various claims to determine whether Bolton has identified the deprivation of a constitutionally protected right.

    1.   Deliberate Indifference to Safety

    Bolton contends that the defendants were deliberately indifferent to her safety because they placed her in general population after she told them that she "had an enemy on the

_____

    [2]A Bivens action is the nonstatutory federal counterpart of a civil rights action pursuant to 42 U.S.C. § 1983.  See Ellis v. Blum, 643 F.2d 68, 84 (2d Cir. 1981).  Thus, the courts looks to section 1983 cases for applicable law.  See Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995).

compound" and was afraid that correctional staff would retaliate against her for the lawsuit she filed at FCI Tallahassee.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty on prison officials to make reasonable efforts to ensure inmate safety.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  This duty includes protecting inmates from harm at the hands of other inmates.  See id.; Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).  To establish a constitutional violation, a prisoner must show that the conditions of her incarceration posed a substantial risk of serious harm and that the prison official was deliberately indifferent to her safety.  See Farmer, 511 U.S. at 834. Deliberate indifference exists where the official both knows of and disregards an excessive risk to inmate safety.  See id. at 837.

Bolton claims that correctional staff failed to investigate her claim that she had an "enemy" at FCI Danbury.  She also alleges, however, that when she was transferred from the special housing unit back to general population, correctional staff informed her that their investigation of her claim revealed no evidence of a serious threat from that inmate.  Bolton filed a grievance in November 2004 because she feared for her safety after a verbal incident.  She concedes that correctional staff spoke separately with each inmate and informed them that the

behavior would not be tolerated.  In addition, Bolton alleges that, pursuant to her request, correctional officials had processed and were waiting for approval of her transfer to another facility.

Bolton does not allege that she was harmed by any other inmate.  In addition, she alleges that the defendants responded to her concerns.  Thus, she has not alleged facts suggesting that she was incarcerated under conditions posing a substantial risk of serious harm and that the defendants took no action in response to her concerns.  Because Bolton fails to state a claim for deliberate indifference to her safety, the defendants' motion to dismiss is granted as to this claim.

### 2.  No Segregation Hearing

Bolton alleges that defendant Pummell did not afford her a hearing when she was placed in segregation for protective custody on November 19, 2004.  The defendants move to dismiss this claim on the ground that Bolton did not exhaust her administrative remedies before filing suit.

Bolton attached to her complaint grievances complaining about the lack of protective custody hearings.  The court has not converted the defendants' motion to dismiss into a motion for summary judgment.  Thus, the court does not consider any evidence attached to the defendants' memorandum.  Because Bolton provided evidence of exhaustion of these claims, the defendants' motion to

12

dismiss is denied as to the due process claims regarding lack of hearings.

       3.   Conditions of Confinement

     In Claim V, Bolton alleges that she was denied a locker and pillow for two weeks, that her housing unit was hot and not clean and that the housing unit lacked adequate ventilation and living space.  In Claim X, she challenged her confinement in a dry cell. Bolton alleges that she was unable to eat, sleep, shower or use the toilet for five days because she was held in restraints during the entire time.

     "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Rhodes v. Chapman, 452 U.S. 337, 351 (1981).  To state an Eighth Amendment claim, an inmate must allege facts demonstrating failure of prison officials to provide for inmates' "basic human needs-e.g., food, clothing, shelter, medical care, and reasonable safety."  DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189, 200 (1989). "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."  Wilson v. Seiter, 501 U.S. 294, 305 (1991).  Bolton must show, objectively, that her deprivation is sufficiently serious, i.e., that her

confinement under the alleged conditions violates contemporary standards of decency, and, subjectively, that the defendants were aware of and disregarded a substantial risk of serious harm.  See Phelps v. Kapnolas, 308 F.3d 180, 185-86 (2d Cir. 2002).

The defendants argue that the conditions described in Claim V do not rise to the level of unconstitutional conditions of confinement.  Bolton alleges that she was not provided a locker or pillow for two weeks.  The court cannot discern how these alleged deprivations violate contemporary standards of decency.

Bolton includes no specific allegations regarding heat, cleanliness, ventilation or living space in her complaint.  The attached documents reveal that Bolton was assigned to a dormitory-style housing unit.  The unit had no window to the outdoors; ventilation was provided by a fan.  Although the housing arrangement may not have been one that Bolton preferred and the other inmates in the unit may not have had the same standards of hygiene as Bolton, she has included in the complaint and attached documents no information to show that the conditions in the dormitory unit violated contemporary standards of decency or subjected Bolton to a substantial risk of harm.  Thus, these Eighth Amendment claims fail as a matter of law.  The defendants' motion to dismiss is granted as to any claims regarding conditions of confinement asserted in Claim V.

The defendants have not addressed the conditions in the dry

14

cell.  Thus, the conditions of confinement claims asserted in
Claim X, remain pending.

      4.   <u>No Assignment to a Two-Person Cubicle</u>

Inmates have no constitutionally protected right to be
confined in any particular correctional facility or housing unit.
See <u>Olim v. Wakinekona</u>, 461 U.S. 238, 248 (1983) (inmates have no
right to be confined in a particular state or a particular prison
within a given state); <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976)
(transfer among correctional facilities, without more, does not
violate inmate's constitutional rights, even where conditions in
one prison are "more disagreeable" or the prison has "more severe
rules); <u>Russell v. Scully</u>, 15 F.3d 219 (2d Cir. 1993) (inmates
have no due process interest in being confined in a certain
location within a prison).  Because Bolton has no
constitutionally protected right to be housed in a two-person
cubicle, the defendants' motion to dismiss is granted as to any
claim regarding her housing assignment.

      5.   <u>Harassment by Staff</u>

Bolton contends that various staff members harassed her by
cursing at her, using vulgar language and ridiculing her.  Verbal
harassment does not rise to the level of a constitutional
violation.  See <u>Martin v. Sargent</u>, 780 F.2d 1334, 1338 (8th Cir.
1985) ("Verbal threats are not constitutional violations
cognizable under § 1983."); <u>Cotz v. Mastroeni</u>, 476 F. Supp. 2d

332, 372 (S.D.N.Y. 2007) (holding that verbal harassment and threats, regardless of how inappropriate, unprofessional or reprehensible, do not violate a federally protected right and are not cognizable under section 1983).  Because verbal harassment, threats and derogatory remarks do not constitute a constitutional violation, the defendants' motion to dismiss is granted as to the harassment claim.

      6.   <u>Denial of Administrative Remedies</u>

Bolton alleges that she was denied the right to file grievances to challenge the two week denial of a storage locker and pillow and the refusal of correctional officials to house her in a two-person cubicle.

Inmates have a constitutional right to petition for redress of grievances.  This right encompassed access to the courts.  It does not include access to prison grievance procedures.  <u>See</u> <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001) (reviewing cases and determining that all courts considering the issue have held existence of prison grievance procedure confers no liberty interest on inmates); <u>Mann v. Adams</u>, 855 F.2d 639, 649 (9th Cir. 1988) (no Constitutional entitlement to prison grievance procedures).

Because Bolton does not have a constitutionally protected right to access to prison grievance procedures, the defendants' motion to dismiss is granted as to this claim.

16

7.   <u>Retaliation</u>

Bolton contends in Claim I that correctional staff retaliated against her because she filed numerous grievances and had filed suit against a correctional officer at another facility.  In Claim II, she argues that he transfer to general population and confinement with inmate Ortiz were retaliatory acts.  In addition, Bolton argues in opposition to the motion to dismiss, that all of the actions alleged in the complaint were done in retaliation for the lawsuit she filed while confined in Florida.

Prison officials may not retaliate against inmates for exercising their constitutional rights.  To state a retaliation claim, Bolton must show that her actions were protected by the Constitution or federal law and that her protected conduct was a "substantial or motivating factor" in the alleged retaliatory conduct.  <u>Friedl v. City of New York</u>, 210 F.3d 79, 85 (2d Cir. 2000).  Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient.  <u>See</u> <u>Flaherty v. Coughlin</u>, 713 F.2d 10, 13 (2d Cir. 2003).

To support a claim of retaliation, the allegedly retaliatory conduct must deter a similarly situated inmate of ordinary resolve from exercising her constitutional rights.  It is not

17

necessary that the plaintiff herself be deterred.  <u>See</u> <u>Gill v.</u>
<u>Pidlypchak</u>, 389 F.3d 379, 381 (2d Cir. 2004).  Any lesser conduct
is *de minimis* and does not support a retaliation claim.  In
addition, prisoners are required to tolerate more serious conduct
before stating a retaliation claim.  Insulting language or
disrespectful comments directed at an inmate are not sufficient
to state a claim for retaliation.  <u>See</u> <u>Davis v. Goord</u>, 320 F.3d
346, 353 (2d Cir. 2003).

Bolton alleges that correctional officers cursed her, used
vulgar language and harassed her for filing grievances.  These
allegations would not deter an individual of ordinary resolve
from filing grievances and did not appear to deter Bolton.  Thus,
these allegations do not state a cognizable retaliation claim.

Bolton alleges that she was transferred to the special
housing unit after she filed a grievance, at her attorney's
direction, regarding the presence of inmate Ortiz in the same
housing unit.  She also alleges that her attorney contacted the
Department of Justice and requested that she be transferred.
Although Bolton assumes that the transfer was retaliatory, the
facts alleges suggest that the transfer was in response to the
requests by Bolton and her attorney.  Thus, Bolton fails to show
that filing a grievance, rather than her desire to be moved from
the housing unit, was the substantial or motivating reason for
the transfer.

However, Bolton alleges that she was returned to general population over her objection, was confined in the same housing unit as inmate Ortiz and was ignored when she complained about threats and abuse from inmate Ortiz.  At this stage of litigation, the court cannot conclude that Bolton will be unable to present evidence to support a retaliation claim based on these allegations.  Accordingly, the defendants' motion to dismiss is granted as to all retaliation claims except those relating to actions requiring Bolton to be in contact with inmate Ortiz.

8.  Right to Education

Bolton alleges that the defendants deprived her of the right to education when they did not permit her to possess materials needed to pursue her correspondence courses in theology.

Inmates have no constitutional right to education or rehabilitative programming.  See Kadrmas v. Dickinson Pub. Sch,, 487 U.S. 450, 458 (1988) (education not a fundamental right); Papasan v. Allain, 478 U.S. 265, 284 (1986) (education is not explicitly protected under the Constitution); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (rehabilitative programming).  Because Bolton has no constitutional right to higher education, the defendants' motion to dismiss is granted as to this claim.

9.  Freedom of Speech

Bolton alleges that defendant Shamro violated her First Amendment right to freedom of speech by issuing her a

19

disciplinary report for threatening him.  The disciplinary charge
was expunged.

Inmates retain those First Amendment rights not inconsistent
with their status as prisoners or with legitimate penological
objectives.  See Jones v. North Carolina Prisoners' Labor Union,
Inc., 433 U.S. 119, 129 (1977).  "Threats, whether explicit or
implicit are not protected speech."  United States v. Chatelain,
360 F.3d 114, 125 (2d Cir. 2004).

Bolton has no First Amendment right to threaten a
correctional officer.  The defendants' motion to dismiss is
granted as to this claim.

### 10.  Use of Excessive Force

Bolton asserts two excessive force claims. In Claim X she
alleges that the defendants used excessive force when she was
transferred to the dry cell in December 2004 and confined in the
dry cell in ambulatory restraints.  In Claim XIII, she alleges
that defendant Clay used excessive force when she tossed a toilet
paper roll toward Bolton.

When considering the use of force by correctional officers,
the court must determine "whether force was applied in a good-
faith effort to maintain or restore discipline, or maliciously
and sadistically to cause harm."  Hudson v. McMillian, 503 U.S.
1, 6-7 (1992) (internal quotation marks and citation omitted).
The court considers objective and subjective components to an

excessive force claim.  See id. at 8.

The objective component relates to the level of physical force used against the inmate and whether that force is repugnant to the conscience of mankind.  See id. at 9-10.  The subjective component focuses on whether the correctional officers had a "wanton" state of mind when they were applying the allegedly excessive force.  See id. at 8.  Although a malicious use of force without significant injury can state a cognizable claim for use of excessive force, de minimis use of force rarely is sufficient to state a constitutional claim.  See Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999).  This approach is consistent with the view that "[e]xcessive force does not, in and of itself, establish malice or wantonness for Eighth Amendment purposes."  Romano v. Howarth, 998 F.2d 101, 186 (2d Cir. 1993).

The court uses the extent of the inmate's injuries as one factor in determining whether the use of force could have been thought necessary by correctional staff or demonstrated an unjustified infliction of harm.  See Hudson, 503 U.S. at 7. Other factors to be considered are the need for use of force, the threat perceived by correctional staff, the relationship between the perceived threat and the amount of force used and efforts by correctional staff to mitigate the amount of the force used.  See Whitley v. Albers, 475 U.S. 312, 321 (1986).  For example, an inmate who does not suffer serious or significant injury may

establish a claim for use of excessive force if he can show that the force used was more than *de minimis* or was "repugnant to the conscience of mankind" and that the defendant acted with a "sufficiently culpable state of mind."  United States v. Walsh, 194 F.3d 37, 48-50 (2d Cir. 1999).

In her first claim, Bolton alleges that her transfer and confinement in ambulatory restraints constitutes use of excessive force.  Bolton voluntarily complied with all requests and no force was used in the transfer.  The essence of her claim appears to be the continued confinement in ambulatory restraints.  At this time, the court cannot discern whether Bolton failed to comply with orders or was a danger to herself or others for the entire time she remained in ambulatory restraints.  See, e.g., Mitchell v. Keene, 974 F. Supp. 332, 340-41 (S.D.N.Y. 1997)(plaintiff satisfied subjective standard by pleading that the defendants used unnecessary force where plaintiff claimed that although he had already been subdued, officers continued to unnecessarily restrain him for no useful purpose other than to inflict pain); but see, e.g., Ajaj v. United States, 479 F. Supp. 2d 501, 537-38 (D.S.C. 2007) (use of ambulatory restraints on federal prisoner did not constitute use of excessive force where imposition followed period of disruptive and destructive behavior).  Accordingly, the defendants' motion to dismiss is denied as to the claim that continued use of ambulatory

restraints constitutes use of excessive force.

In the second claim, Bolton alleges that defendant Clay hit a roll of toilet paper toward her.  Not every malevolent touch by a prison guard constitutes a federal claim.  See <u>Boddie v. Schneider</u>, 105 F.3d 857, 862 (2d Cir. 1997).  Here, the roll of toilet paper did not touch Bolton.  This allegation does not rise to the level of a cognizable constitutional violation.

The defendants' motion to dismiss is granted as to the claim against defendant Clay for use of excessive force.

### 11.   <u>Suspension of Telephone Privileges</u>

Bolton alleges that her telephone privileges were suspended for 180 days after she was found guilty of violating the telephone policies.  Bolton received a disciplinary report for giving her telephone access code to another inmate, an action specifically prohibited under Bureau of Prisons rules.  See 28 C.F.R. § 540.101(c) (prohibiting an inmate giving another inmate her telephone access code).  She concedes that she violated the rule, but challenges her sanction on the ground that the disciplinary hearing was held more that three days after she received the incident report.

Due process requires that prison disciplinary findings be supported by "some evidence."  <u>Superintendent v. Hill</u>, 472 U.S. 445, 455-56 (1985).  If there is any evidence in the record to support a guilty finding, the standard is met.  See <u>Zavaro v.</u>

Coughlin, 970 F.2d 1148, 1148-49 (2d Cir. 1992).  Bolton does not argue that she did not give her telephone access code to the other inmate.  Thus, the decision is supported by some evidence.

In addition, federal regulations provide that a hearing ordinarily is held within three work days from receipt of the incident report.  See 28 C.F.R. § 541.15(b).  The date may be extended for good cause demonstrated by correctional staff or the inmate and documented in the record of the hearing.  See 28 C.F.R. § 541.15(k).  The extension of time in this case was approved by the warden and included in the record of the hearing.

Courts considering whether a delay in the hearing date violates due process have held that due process is violated only where the delay prejudiced the inmate's ability to present her case.  See United States ex rel. Houston v. Warden, 635 F.2d 658-59 (7th Cir. 1980), cert. denied, 454 U.S. 843 (1981); Oswaldt v. Godinez, 894 F. Supp. 1181, 1196 (N.D. Ill. 1995).  Bolton alleges no prejudice as a result of the delay.  Thus, she fails to state a cognizable due process claim.  The defendants' motion to dismiss is granted as to the claim for suspension of telephone privileges.

IV.  Conclusion

The defendants' Motion to Dismiss [**Doc. #16**] is **GRANTED** as to all claims against defendant Bureau of Prisons and any other defendant in his or her official capacity, the conditions of

24

confinement claim in Claim V of the complaint, the claims for verbal harassment, denial of assignment to a two-person cubicle, deliberate indifference to safety, denial of administrative remedies, denial of higher education, suspension of telephone privileges, violation of freedom of speech, the claim for use of excessive force asserted against defendant Clay and all retaliation claims based on verbal harassment or transfer to the special housing unit.  The motion is **DENIED** in all other respects.  Any common law tort claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (iii).

The case will proceed on the claims for retaliation relating to forced contact with inmate Ortiz, denial of due process caused by the lack of protective custody hearings, deliberate indifference to medical and mental health needs, conditions of confinement in the dry cell, use of excessive force by continued use of restraints for five days and supervisory liability.

Bolton has been released from prison and now resides in Missouri.  All *pro se* litigants must maintain an address for service within the District of Connecticut.  See Rule 83.1(c)2, D. Conn. L. Civ. R.  Accordingly, Bolton is directed to inform the court of her local address within **twenty (20)** days from the date of this order.  Failure to comply will result in the dismissal of this action.

**SO ORDERED** this 28th day of August, 2007, at Bridgeport,

Connecticut.

_____/s/_____
Alan H. Nevas
United States District Judge